# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DR. EILEEN STUDDERS,

      Plaintiff,

      v.

GEISINGER CLINIC, *et al.*,

      Defendants.

No. 4:20-CV-00914

(Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 11, 2021

## I.     BACKGROUND

On September 21, 2020, Plaintiff Dr. Eileen Studders filed an eight-count amended complaint against Defendants Geisinger Clinic, Geisinger Medical Center, Geisinger Health, Robert Pellecchia, Mohsen Shabahang, Gayatri Malik, Jaewon Ryu, and Lynn Miller (together, the "Defendants").  The amended complaint brings claims for violations of the Pennsylvania Whistleblower Law, the Pennsylvania Human Relations Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, Pennsylvania contract law, Pennsylvania defamation law, and the Pennsylvania Wage Payment and Collection Law.

Defendants filed a motion to dismiss the amended complaint on October 5, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The motion is now ripe for disposition; for the reasons that follow, it is

granted in part and denied in part.  However, Plaintiff will be provided leave to amend the complaint.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]   These

---

[1]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[4]  *Id.* at 327.

[5]  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316; 319-20 (2012).

[6]  550 U.S. 544 (2007).

[7]  556 U.S. 662, 678 (2009).

[8]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[9]   *Id.* ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[10]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]  *Id.*
[12]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).
[13]  *Twombly*, 550 U.S. at 556.
[14]  *Iqbal*, 556 U.S. at 679.

plausibility of entitlement to relief.'"[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

A plaintiff in an employment discrimination case does not need to establish a prima facie case in his or her complaint.  The United States Court of Appeals for

---

15   *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).
16   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
17   *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").
18   *Id.* at 678.
19   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

the Third Circuit clarified this point recently, stating: "a complaint need not establish a prima facie case in order to survive a motion to dismiss."[20]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[21]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[22] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[23]  It is permissible to consider full text of documents partially quoted in complaint.[24]  It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[25]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[26]   "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[27]  It must also be clear that there exist no material disputed issues of fact regarding the

---

[20]   *Id*. at 788.
[21]   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[22]   *See id.* and Fed. R. Civ. P. 12(d).
[23]   *Faulkner,* 463 F.3d at 134.
[24]   *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801, 808–09 (2d Cir. 1996).
[25]   *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).
[26]   *Faulkner*, 463 F.3d at 134.
[27]   *Id. See also, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).

relevance of the document.[28]  In this matter, I find that these conditions have been met, and will consequently consider the attachments.

### B.    Facts Alleged in the Amended Complaint

The relevant facts alleged in the amended complaint, which I must accept as true for the purposes of this motion, are as follows.

Plaintiff, Dr. Eileen Studders, relocated from Wisconsin to Pennsylvania in 2013 and began working for Geisinger as a flex locum employee in 2014.[29] Plaintiff taught resident students and treated patients.[30]  In early 2016, Plaintiff became the Program Director and Interim Chief of Pediatric Dentistry at Geisinger.[31]  According to Plaintiff, she maintained a good working relationship with Dr. Robert Pellechia, the Chair of Oral Medicine at Geisinger, for the first six months in her new position.[32]  In August 2016, however, Dr. Pellechia began a campaign of harassment against Plaintiff in order to replace her with Dr. Gayatri Malik, whose husband was a close friend of Dr. Pellechia.[33]  In the following months and years, Plaintiff was involved in a number of workplace disagreements with Dr. Pellechia, Dr. Malik, and Dr. Anil Kotru (Dr. Malik's husband), involving, *inter alia*, a paid time off request from Dr. Malik,[34] name-calling,[35] and

---

[28]  *Faulkner*, 463 F.3d at 134.
[29]  Doc. 18 at ¶¶ 19-20.
[30]  *Id.*
[31]  *Id.* at ¶ 23.
[32]  *Id.* at ¶¶ 24; 13.
[33]  *Id.* at ¶¶ 25.
[34]  *Id.* at ¶¶ 26-28.
[35]  *Id.* at ¶¶ 29-30.

violations of the residency "match process."[36]  Dr. Malik would also try to

undermine Plaintiff with the resident students, often complaining that Plaintiff

made the residents work too hard.[37]

After a series of workplace disputes, including one where Plaintiff reported

Dr. Malik for improperly using copyrighted exam questions, in violation of the

American Association of Pediatric Dentistry Inservice Exam rules,[38] Plaintiff

announced that she would resign from her position as Program Director in June

2018.  After that last incident, Plaintiff's relationship with Dr. Pellecchia and Dr.

Malik deteriorated further.[39]  Plaintiff stopped being included in department

monthly meetings,[40] and her interactions with the individual defendants became

less frequent and more terse.[41]  Dr. Malik also held meetings where she spoke

poorly about Plaintiff to the resident students; when Plaintiff tried to address these

concerns, Dr. Malik refused to engage.[42]

Despite further disagreements with and mistreatment by Dr. Malik and Dr.

Pellecchia, Plaintiff rescinded her resignation via a letter to Geisinger senior

leadership.  At the same time, she asked leadership to improve the work

---

[36] *Id.* at ¶¶ 31-40.
[37] *Id.* at ¶¶ 46-47.
[38] *Id.* at ¶¶ 58-75.
[39] *Id.* at ¶ 82.
[40] *Id.* at ¶ 85.
[41] *Id.* at ¶¶ 85-87.
[42] *Id.* at ¶ 88.

environment and prevent any retaliation against her.[43]  She told leadership that she

believed she was being discriminated against because of her sex.[44]  A committee

conducted a special review of the department and recommended changes in

leadership.[45]  Geisinger did indeed change leadership, but instead of removing Dr.

Pellecchia from his position, Geisinger removed Dr. Studders as program director

and appointed Dr. Stinton.[46]  Dr. Stinton (a younger female doctor) had previously

told Dr. Studders that she had no interest in teaching or supervising the residents.[47]

Eventually, after attempts to repair the relationship with her employer, Plaintiff

retained legal counsel to handle communications between herself and Geisinger.[48]

After a series of communications, Plaintiff's counsel attempted to have her

reinstated as program director in exchange for her returning to a full-time

position.[49]  Geisinger refused and Plaintiff resigned on March 7, 2018.[50]

## C.    Analysis

Dr. Studders has sued the Defendants for violations of the Pennsylvania

Whistleblower Law, the Pennsylvania Human Relations Act, Title VII of the Civil

Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the

---

[43]  *Id*. at ¶¶ 120-124.
[44]  *Id*. at ¶ 124.
[45]  *Id.* at ¶¶ 125-35.
[46]  *Id*. at ¶ 136.
[47]  *Id*.
[48]  *Id*. at ¶ 148.
[49]  *Id*. at ¶ 155.
[50]  *Id*. at ¶156-57.

Pennsylvania Wage Payment and Collection Law.  She has also raised claims for breach of contract and defamation.  The Court considers each claim in turn.

### 1.    Pennsylvania Whistleblower Law Claim – Count 1

Plaintiff first raises a claim under the Pennsylvania Whistleblower Law (the "PWL"), arguing that she observed and reported waste and wrongdoing by the Defendants, who then retaliated against her.  The PWL prohibits covered employers from discharging, threatening, or otherwise discriminating or retaliating against an employee who has reported, or is about to report "an instance of <u>wrongdoing or waste by a public body</u> or an instance of <u>waste by any other employer</u> as defined in this act."[51]  A "public body" is, in relevant part, defined as any "body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth."[52]  An "employer" is defined as a public body or other entity which "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body."[53]

The amended complaint aims to plead that Geisinger is an "employer" covered by the statute.  Plaintiff's attempt to recast her complaint as pleading that Geisinger is a public body is unavailing.  First, Plaintiff takes the time to explain that in 2014, the Pennsylvania General Assembly "expanded the reach of the law

---

[51]   43 P.S. § 1423(a) (emphasis added).
[52]   43 P.S. § 1422.
[53]   *Id.*

beyond public bodies" to include other "employers."[54]  Then, Plaintiff alleges that "Geisinger is an employer for purposes of and subject to Pennsylvania's Whistleblower Law."[55]  At no point does Plaintiff claim that Geisinger itself is a public body.

Because Plaintiff's complaint exclusively pleads an "employer" theory, she can only state a claim under the PWL if she alleges facts showing that she reported waste by Geisinger.[56]  The PWL defines waste as an "employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."[57]  But as other courts have noted, there is a "dearth of case law in this Commonwealth" interpreting what constitutes waste under the statute.[58]  Plaintiff does not, however, plead facts from which this Court can ascertain – or even approximate – the amount of alleged waste that resulted from "the acts and omissions of Dr. Malik and the Oral Surgery Department under the direction and control of Dr. Pellechia."[59]  The question is not about the number of "instances"

---

[54]  Doc. 18 at ¶ 174.

[55]  *Id.* at ¶ 175.

[56]  43 P.S. § 1423(a).  Defendants argue that Plaintiff has not even established that they are "employers" covered by the statute.  The Court does not address this argument, however, because even if Plaintiff had pled facts supporting that Defendants are employers as defined by the statute, she has not made the requisite showing of waste.  Plaintiff should, however, consider (among other questions) whether funding given to non-defendant Geisinger entities implicates the Geisinger Defendants.

[57]  43 P.S. § 1422.

[58]  *Allen v. City of Philadelphia*, 2019 WL 1528538 at *5 (Pa. Cmwlth. 2019).

[59]  Doc. 18 at ¶ 181.

Plaintiff pleads,[60] but rather whether those instances amount to waste, as defined by the PWL.

Plaintiff also seeks a civil fine not greater than $10,000 per Defendant.[61] But in a section entitled "Remedies," the PWL provides that a person alleging a violation of the law may bring a civil claim seeking "appropriate injunctive relief or damages, or both."[62]  These damages include "the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies," as well as costs of litigation.[63]  It is clear that "under Pennsylvania law[,] when a statute provides a particular remedy, that remedy is exclusive."[64]  Civil fines are not available for Plaintiff to recover; any civil fines would be "paid to the State Treasurer for deposit into the General Fund."[65]  As such, I find that Plaintiff is not entitled to recover civil fines for herself.

As pled, Plaintiff has not stated a claim under the PWL.  Therefore, Count 1 is dismissed.  Plaintiff has requested leave to amend in order to clarify her claim and argument; the Court will grant this request.

---

[60]   Doc. 25 at 17.
[61]   Doc. 18 at 68.
[62]   43 P.S. § 1424.
[63]   43 P.S. § 1425.
[64]   *Palazzolo v. Damsker*, 2011 WL 2601536 at *10 (E.D. Pa. June 30, 2011) (denying claim for punitive damages because
[65]   43 P.S. § 1426.

### 2.    Sex Discrimination Claims – Counts 2, 3, and 4

Plaintiff raises three claims of sex discrimination: (1) a Title VII discrimination claim; (2) a PHRA discrimination claim; and (3) a PHRA aiding and abetting discrimination claim.[66]  Plaintiff also raises claims of hostile work environment and retaliation under Title VII and the PHRA.

### a.    Discrimination

Title VII makes it illegal for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[67]  When an employee's sex is a but-for cause of discrimination by an employer, that employer has violated Title VII.[68]  Plaintiff seeks to proceed under the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*.[69]  In order to establish sex discrimination, Plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination."[70]

---

[66] The Court considers the Title VII and PHRA claims together, as the analysis is the same. *See, e.g.*, *Alcantara v. Aerotek, Inc.*, 2018 WL 3007528 at *14 (M.D. Pa. June 15, 2018) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409-10 (3d Cir. 1999)).

[67] 42 U.S.C. § 2000e–2(a).

[68] *Bostock v. Clayton County*, --- U.S. ---, 140 S. Ct. 1731, 1739–40, 207 L.Ed.2d 218 (2020).

[69] 411 U.S. 792 (1973).

[70] *McNamara v. Susquehanna County*, 2018 WL 2183266 at *3 (M.D. Pa. May 11, 2018).

Plaintiff's theory is that she was treated differently from her male colleagues because of her sex.  The parties seem to agree that the first three elements of the claim have been satisfied; their dispute stems from the question of causation. Defendants assert that Plaintiff has failed to state a *prima facie* case of discrimination based on sex because the facts she alleges point to another explanation for any adverse employment action – namely, that she had poor working relationships with her colleagues and that Dr. Pellecchia wanted to give his friend's wife a job.[71]  Defendants misapprehend Plaintiff's burden at this stage. To survive a motion under Rule 12(b)(6), she need only plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[72]  But even under this less onerous standard, Plaintiff fails to sufficiently state a claim.

Plaintiff accuses Defendants of ignoring "key, relevant allegations" that would withstand dismissal.  For example, Plaintiff points to her allegation that "Dr. Pellecchia subjected numerous female employees of Geisinger to bullying, harassment, intimidation, discrimination, and retaliation on the basis of their sex."[73]  She also alleges that Defendants ignore her claim that Dr. Pellecchia engaged in a "years-long systemic practice of engaging in bullying, harassment,

---

[71] Doc. 23 at 20-21.

[72] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

[73] Doc. 18 at ¶ 188.

intimidation, discrimination, and retaliation on the basis of subordinates' sex," and that others knew about this.[74]  But Plaintiff herself ignores the fact that that such allegations, which amount to little more than threadbare recitals of the elements of her claim, are "to be disentitled to any presumption of truth."[75]  The Third Circuit has previously found similar language insufficient.  Allegations that supervisors "subjected [Plaintiff] to disparate treatment based on her gender and retaliation for making complaints about discrimination and sexual harassment" or that employers violated Title VII and the PHRA "[b]y subjecting [Plaintiff] to discrimination based on her gender and retaliation" simply "paraphrase . . . the pertinent statutory language" and are not given the presumption of truth.[76]  And the underlying allegations which Plaintiff relies on are insufficient to support the claim, as they largely do not point to discrimination against Plaintiff herself.  Because her sex discrimination claim is not supported by well-pled facts, it cannot survive a motion to dismiss.

Finally, to the extent that Plaintiff pleads a disparate impact theory – an uncertain proposition – it also fails.  Disparate impact claims seek redress for what is sometimes referred to as "unintentional discrimination" involving "employment practices that are facially neutral in their treatment of different groups but that in

---

[74]  *Id.* at ¶ 189.
[75]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).
[76]  *Id.*

fact fall more harshly on one group than another."[77]  Codified by statute in the Civil Rights Act of 1991, a disparate impact claim must first "demonstrate[ ] that a respondent *uses a particular employment practice* that causes a disparate impact on the basis of race, color, religion, sex, or national origin."[78]

Plaintiff's purported theory is that despite "having a neutral standard in hiring and employment, the Geisinger entities have permitted Dr. Pellecchia to engage in a years-long pattern of sex and age discrimination."[79]  This very description, however, shows why her disparate impact theory is dead on arrival. Plaintiff is not complaining that Defendants actually applied a purportedly neutral hiring practices, which resulted in sex and age discrimination.  She is claiming that they misapplied, or more accurately, *ignored* their own policies and chose to discriminate against her.  This is, definitionally, intentional discrimination and cannot be pled through a theory of disparate impact.

While both the disparate treatment and disparate impact theories are dismissed for failure to state a claim, the Court will only allow Plaintiff to replead the disparate treatment theory.  It is clear from Plaintiff's complaint that amending the disparate impact theory would be futile because there is no facially neutral policy that was applied and caused a disparate impact.

---

[77]  *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).
[78]  42 U.S.C. § 2000e–2(k)(1)(A)(i) (emphasis added).
[79]  Doc. 24 at 22.

### b.   Hostile Work Environment

Plaintiff's argument in support of her hostile work environment is nearly nonexistent.  Plaintiff simply rests on the "reasons discussed" in previous sections of her brief, which deal with entirely different causes of action, requiring different allegations to state a claim.  Nevertheless, the Court examines those allegations.

Title VII makes illegal sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment."[80]  To establish a hostile work environment, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability."[81]  The Court must consider the "totality of the circumstances" in determining whether such claims survive.[82]

It fails, in the first instance, because Plaintiff has not established that she suffered discrimination on the basis of sex.  Once again, Plaintiff's threadbare recitals of the statutory language do not, on their own, state a claim upon which relief may be granted.  Second, even if she had met her burden under the first prong, Plaintiff fails to establish that the discrimination was severe or pervasive.  I

---

[80]   *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).
[81]   *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).
[82]   *Jensen v. Potter*, 435 F.3d 444, 451-52 (3d Cir. 2006) (Alito, J.).

weigh several factors, including: the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[83]  The alleged instances do not appear to have been particularly severe or pervasive, or physically threatening or humiliating.

Third, largely because of her shortcomings in establishing the other elements of this claim, there is no showing from Plaintiff that the alleged harassment would have affected a reasonable person in similar circumstances.  Likewise, Plaintiff cannot establish vicarious liability for those reasons.  Plaintiff has failed to state a claim for a hostile work environment.  The Court will, however, allow Plaintiff to amend her complaint based on this theory.

### c.    Retaliation

A "prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[84]  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled

---

[83] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
[84] *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (Hardiman, J.) (internal quotation marks omitted).

with timing to establish a causal link."[85]  Importantly, in the retaliation context, Plaintiff need not establish that there actually was discrimination, but rather only that she believed there was.[86]

Defendants' argument here hinges on the idea that Plaintiff did not actually report any sort of sexual discrimination or harassment.  Defendant points to the letter that Plaintiff wrote to Geisinger leadership and characterizes it as simply "complaining about a fractured/awkward working relationship."[87]  This perspective omits the allegations from the following paragraph, wherein Plaintiff states that she also "informed Geisinger's senior leadership that she believed that she, like other women before her, was being discriminated against on the basis of her sex."[88]  As discussed previously, Plaintiff need not make out a *prima facie* case to survive this motion.  Considering the generous pleading standards afforded to plaintiffs in employment discrimination cases, this Court cannot say that this claim should be dismissed.  Indeed, Plaintiff has established the requisite elements of this claim.  Defendants do not challenge the temporal connection supporting an inference of causation, and therefore the motion to dismiss is denied as to the retaliation claim.

---

[85]  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).
[86]  *See Moore v. City of Philadelphia*, 462 F.3d 331 (3d Cir. 2006).
[87]  Doc. 25 at 11 (quoting Doc. 18 at ¶ 123).
[88]  Doc. 18 at ¶ 124.

### d.      Aiding and Abetting

The PHRA gives plaintiffs additional recourse, allowing them to hold liable anyone who may "aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."[89]  Stating a claim for aiding and abetting, therefore, hinges on the success of the "primary violation;" in other words, an individual cannot be found liable for aiding and abetting a discriminatory practice if there is no discriminatory practice in the first instance.

Most of Plaintiff's claims for aiding and abetting under the PHRA are subject to dismissal.  First, the claims for sex discrimination, a hostile work environment, and age discrimination fail because "[i]ndividual defendants cannot, however, be liable for violations of Section 955(e) if there is no primary violation of the PHRA."[90]  However, the aiding and abetting claim premised on retaliation survives at this time.  Defendants only specifically challenge the aiding and abetting claim as to Defendant Jaewon Ryu.  Plaintiff has sufficiently alleged that Defendants Ryu, Pellecchia, Shabahang, and Miller could have prevented the retaliation against Plaintiff but chose not to. Therefore, the motion to dismiss is denied as to this limited theory.

---

[89]   43 Pa. C.S.A. § 955(e).

[90]   *Caso v. Luzerne County*, 2015 WL 1951610 at *19 (M.D. Pa. Apr. 28, 2015) (quoting *Sampson v. Methacton Sch. Dist.*, 88 F.Supp.3d 442, 446 (E.D. Pa. 2015)).

### 3.      Age Discrimination Claims – Count 2, 3, and 5

Defendants move to dismiss Plaintiff's claim of discrimination under the

Age Discrimination in Employment Act of 1967 (the "ADEA") and the PHRA.[91]

The ADEA prohibits employers from discriminating against or firing their

employees on the basis of age.[92]  To establish an age discrimination claim under

the ADEA, a plaintiff must allege that (1) she was forty years of age or older; (2)

that Geisinger took an adverse employment action against her; (3) that she was

qualified for the position in question; and (4) that she was ultimately replaced by

another employee "who was sufficiently younger to support an inference of

discriminatory animus."[93]  The parties do not contest the first three elements, but

dispute whether the circumstances surrounding Defendants' choice to replace

Plaintiff with one Dr. Slack can establish discriminatory animus.  To plausibly

allege the fourth element, Plaintiff may either plead that similarly situated

employees who were under 40 were treated more favorably than she, or she may

otherwise plead a causal nexus between Plaintiff's age and the adverse action

---

[91]   As with sex discrimination cases, courts perform the same analysis under the ADEA and the
       PHRA.  Therefore, I consider these jointly, as they rise and fall together.  *See Willis v.
       UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015).
[92]   29 U.S.C. § 623(a)(1); *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643
       (3d Cir. 2015).
[93]   *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citations omitted).

taken.[94]  Plaintiff appears to only argue discriminatory animus based on the causal nexus theory.

Defendants argue that Plaintiff has failed to allege facts sufficient to infer that Plaintiff's age was the cause of the adverse employment action, as the fourth prong of an ADEA claim requires.[95]  The lack of "any ageist allegations" precludes, they contest, a determination in favor of Plaintiff on the issue of causation.[96]  Plaintiff responds by pointing out that she has alleged that she was in her forties and the person who replaced Plaintiff was in her early thirties.[97]  She also attempts to claim that Defendants ignored a directive from the special committee's review, which recommended an external hire if Plaintiff were to be replaced.  Plaintiff claims that this external search "likely would have led" to hiring an older and more qualified person than Dr. Slack.

Neither argument supports an inference of discrimination.  Plaintiff attempts to distinguish the facts of her case from this Court's ruling in *Martinez v. UPMC Susquehanna*.[98]  In the past week, the Third Circuit has clarified its view of the pleading requirements in an ADEA case, issuing its opinion in the *Martinez*

---

[94]   *Drummer v. Trustees of University of Pennsylvania*, 286 F.Supp.3d 674, 681 (E.D. Pa. 2017) (quoting *Greene v. Virgin Islands Water & Power Authority*, 557 Fed. Appx. 189, 195 (3d Cir. 2014)).

[95]   *Id.* at 691.

[96]   Doc. 23 at 25.

[97]   Doc. 24 at 25-26.

[98]   2019 WL 3776587 (M.D. Pa. Aug. 12, 2019).

appeal.[99]  The first lines in the Circuit's opinion clearly state the holding.  "At the

pleading stage, an age-discrimination plaintiff does not have to know his

replacement's exact age.  That age can come out in discovery."[100]  Writing for the

Third Circuit, Judge Stephanos Bibas held that the phrase "significantly younger"

is a factual allegation, which is entitled to the presumption of truth granted to well-

pled facts.[101]  Of course, Plaintiff here has alleged more than the plaintiff in

*Martinez* did.  Therefore, this Court finds that Plaintiff's "factual allegations of age

differences are enough."[102]

But I do not read the Circuit's opinion as ending the analysis there.  The

opinion goes on to note that the complaint in *Martinez* also "add[ed] suspicious

details" and that "*th[o]se* facts raise[d] the reasonable expectation that discovery

will uncover evidence of discriminatory motive."[103]  This is an invocation of

language commonly used by the Third Circuit to explain the pleading requirement

for a plaintiff in an employment discrimination case.[104]  It seems clear that the

Circuit requires more than just a cursory recital of the claim's elements.

Additional facts which support an inference of discrimination are still necessary.

---

[99]   *Martinez, M.D.*, *v. UPMC Susquehanna*, ---F.3d---, 2021 WL 298730 (3d Cir. 2021).
[100]  *Id*. at *1.
[101]  *Id*.
[102]  *Id*.
[103]  *Id.* (emphasis added).
[104]  *See, e.g.*, *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016).

This reading is supported by the multiple courts that have found that simply asserting that a plaintiff was replaced by someone younger, without facts that actually point to an inference of discrimination, cannot establish an ADEA claim.[105]  As those courts have explained, if simply alleging an age disparity were sufficient to state a claim, no employer could replace an employee over the age of forty with a younger candidate "without exposing itself to potential liability for age discrimination."[106]  I do not read the Third Circuit's opinion in *Martinez* as diminishing the expectation that a plaintiff must do more than simply regurgitate the cause of action to stave off dismissal.  Finding otherwise would appear to revert to a pre-*Twombly* and *Iqbal* world that the federal courts have advanced past.  Here, Plaintiff has not pled similarly suspicious details leading to an inference of age discrimination.

Plaintiff's second argument also fails because it simply does not move the needle on the issue of causation.  The assumption that an external search would likely have resulted in an older candidate is conclusory and unsupported by well-pled facts.  While Plaintiff does not need to establish a *prima facie* case at this stage, she does need to support her claim with facts that "raise a reasonable

---

[105] *See, e.g., Hause v. City of Sunbury*, 2019 WL 6726406 at *6 (M.D. Pa. Dec. 11, 2019) (citing *Foster v. Humane Soc. of Rochester & Monroe Cty., Inc.*, 724 F. Supp. 2d 382 at 391 (W.D.N.Y. 2010)).

[106] *Foster v. Humane Soc. of Rochester & Monroe Cty., Inc.*, 724 F. Supp. 2d 382 at 391 (W.D.N.Y. 2010))

expectation that discovery will reveal evidence of the necessary element[s] of the prima facie case."[107]

To be sure, Plaintiff's allegation – that she was recognized as a strong program director and was replaced by someone who was less experienced and uninterested in teaching – does suggest that Plaintiff was replaced for some reason other than her own performance in the position.  But Plaintiff does not plead facts to fill the gap between that suggestion and an inference of age discrimination.  Plaintiff's complaint repeatedly suggests that interpersonal problems and favoritism of another candidate led to the end of Plaintiff's tenure at Geisinger.  This is the only theory Plaintiff offers in the complaint.  Accordingly, Counts 2 (the PHRA claim) and 5 (the ADEA claim) are dismissed, as is Count 3 (the aiding and abetting claim predicated on Count 2), but Plaintiff will be granted leave to amend the complaint.

### 4.    Breach of Contract – Count 6

Defendants also argue that Plaintiff's claim for breach of contract should be dismissed.  To state a claim for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by that contract; and (3) resultant damages.[108]  I operate against the background principle that employment in Pennsylvania is at-will, absent any

---

[107] *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted).

[108] *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).

contrary statutory or contractual provisions.[109]  Where such provisions are absent, a plaintiff may attempt to plead an "implied-in-fact" contract, which requires that additional consideration flow from the employer to the employee, allowing the court to infer that the parties "intended to overcome the at-will presumption."[110]

The parties agree that Plaintiff entered into a Practice Agreement in 2016, governing the terms of her employment with Geisinger.  This document, by its terms, constituted the entire agreement between Plaintiff and Geisinger, and could only be modified by a "writing signed by an appropriate representative of Geisinger."[111]  Furthermore, the Practice Agreement contains a clear at-will employment clause, reiterating that Plaintiff's position "may be terminated at any time by either party for any or no reason."[112]

Plaintiff's argument is therefore based on the idea that she subsequently entered into "an agreement for a definite duration pursuant to which Plaintiff was entitled to remain in the Program Director role through at least June 30, 2018." But Plaintiff's claim once again consists of little more than a recitation of the elements of the claim.  For this breach of contract claim to survive, the subsequent agreement would have to be executed in writing, and signed by a Geisinger representative.  Plaintiff pleads no facts that would overcome the presumption of

---

[109]  *Wallett v. Pennsylvania Turnpike Comm'n*, 528 Fed. Appx. 175, 180 (3d Cir.2013).
[110]  *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 Fed. Appx. 936, 940 (3d Cir. 2003) (quoting *Raines v. Haverford College*, 849 F. Supp. 1009, 1012 (E.D. Pa. 1994)).
[111]  Doc. 12 Ex. A.
[112]  *Id.*

an at-will employment agreement.  Simply alleging that a later "agreement" existed is insufficient in this case, given the preexisting restrictions placed on modifications of the terms of Plaintiff's employment.  Contrary to her assertion, she has not alleged "the enforceability of"[113] this subsequent agreement, and this theory therefore fails.

Plaintiff's second argument fares no better.  She suggests that Geisinger's failure "to abide by and enforce various policies, guidelines, and codes and fail[ure] to act in accordance with its supposed commitments throughout its website to 'diversity and inclusion,' nondiscrimination in hiring and employment, and effective Corporate Compliance Reporting" constitutes a breach of contract, because by adopting such policies and sharing them on its website, Geisinger intended to create a contractual relationship with Plaintiff.

First, Plaintiff once again clearly pleads her conclusion, but offers no facts in support thereof.  The Court is not required to credit unsupported conclusions.  They do not constitute well-pled facts.  But of greater concern, this argument would completely eviscerate at-will employment anytime an employer violated a policy in its handbook or website.  Plaintiff's argument would also then apply to every other Geisinger employee; suddenly, they would all be contracted employees, rather than at-will.  This is not the state of the law in Pennsylvania.

---

[113]  Doc. 25 at 32-33.

"An employer's policy statement that it will comply with its legal obligations, without more, does not create a legally binding obligation."[114]  Plaintiff has provided no support to the contrary, and this Court declines to implement what would appear to be a drastic shift in Pennsylvania employment relationships.

Plaintiff's claim for breach of contract is dismissed; she may replead this Count, but <u>not</u> based on the theory stemming from Geisinger's policies or website. Examining Plaintiff's pleading and argument, it is clear she has explored this option and explained the underlying facts, and I find it would be futile to allow her to argue this theory again.  Therefore, it would also be prejudicial to Defendants to force them to draft a second round of briefs arguing against a futile theory.  If Plaintiff wishes to add facts to support her theory based on a subsequent agreement, or explore a new avenue, she is welcome to.  My current ruling only forecloses the one theory.

### 5.    Defamation – Count 7

Plaintiff alleges that Defendants Pellechia and Malik made defamatory statements that injured her professional standing.[115]  In her complaint, Plaintiff specifically noted the paragraphs which she believed constituted defamation.[116] After Defendants filed their brief in support of their motion to dismiss, Plaintiff

---

[114] *McDonald v. SEIU Healthcare Pennsylvania*, 2014 WL 4672493 at *19 (M.D. Pa. Sept. 18, 2014) (citing *Monaco v. American General Assur. Co.*, 359 F.3d 296, 308 (3d Cir. 2004)).
[115] Doc. 18 at ¶¶ 222-230.
[116] *Id*. at ¶ 223.

seems to have narrowed her focus to just four paragraphs.[117]  Out of an abundance

of caution, the Court considers Plaintiff's original, broader list from the complaint.

In order to state a claim for defamation under Pennsylvania law, a plaintiff must

generally establish: "(1) the defamatory character of the communication; (2) its

publication by the defendant; (3) its application to the plaintiff; (4) the

understanding by the recipient of its defamatory meaning; (5) the understanding by

the recipient of it as intended to be applied to the plaintiff; (6) special harm

resulting to the plaintiff from its publication; and (7) abuse of a conditionally

privileged occasion."[118]  But when a plaintiff claims defamation *per se*, she does

not need to establish special harm, though she must plead general damages.[119]

Defamation *per se* "occurs where a publication imputes to another conduct,

characteristics, or a condition that would adversely affect her in her lawful business

or trade."[120]

     Defendants argue that none of the statements at issue are capable of

defamatory meaning.  Several limiting principles are applicable here.  For

example, a statement of opinion cannot, on its own, constitute defamation.[121]

---

[117] Doc. 24 at 33.

[118] *Byars v. Sch. Dist. of Philadelphia*, 942 F. Supp. 2d 552, 563 (E.D. Pa. 2013) (citing 42 Pa.C.S. § 8343(a)).

[119] *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 343 (3d Cir.2005).  "[P]roof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both," constitutes general damages. *Id*. (quoting *Walker v. Grand Central Sanitation, Inc.*, 430 Pa. Super. 236, 634 A.2d 237 (1993)).

[120] *Id*. (internal quotation marks omitted).

[121] *See, e.g., Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir.1999).

Furthermore, statements "which are merely annoying or embarrassing or [are] no more than rhetorical hyperbole or a vigorous epithet are not defamatory."[122]  Upon review, most of these paragraphs either do not allege any statement by either Defendant *at all*, or they allege clear statements of opinion, but a small number of alleged statements may constitute defamation, so this claim survives.

The Court considers each alleged defamatory statement in turn:

- Paragraphs 25 and 26 do not identify any statement by either Dr. Pellecchia or Dr. Malik about Plaintiff.

- Paragraphs 27 and 28 contain statements by Defendants that may be defamatory.

- Paragraph 29 does not identify any statement by either Dr. Pellecchia or Dr. Malik about Plaintiff.

- Paragraph 30 contains a statement in which Dr. Pellecchia describes Plaintiff as "arrogant."  Name-calling and insults like this are not defamatory.  Arguably far-worse descriptors have been found to be incapable of defamatory meaning.[123]  For example, Courts have rejected defamation claims based on describing individuals as "crazy,"[124] "paranoid,"[125] and "schizophrenic."[126]

- Paragraphs 46 and 47 contains a statement in which Dr. Malik complained to resident students that Plaintiff "worked them too hard" or that she "never allowed the residents to have fun."  These are statements of opinion and not actionable.  Indeed, much more serious accusations have been deemed statements of opinion.[127]

---

[122] *Id.*

[123] *See, e.g.*, *Peschmann v. Quayle*, 2019 WL 5075802 at *7 (collecting cases).

[124] *Kryeski v. Schott Glass Technicians. Inc.*, 426 Pa. Super. Ct. 105, 117-18 (1993).

[125] *Fram v. Yellow Cab Co. of Pittsburgh*, 380 F. Supp. 1314 (W.D. Pa. 1974)

[126] *Id.*

[127] *See, e.g.*, *Purcell v. Ewing*, 560 F.Supp.2d 337, 342 (M.D. Pa. 2008) (claim that plaintiff was a "pervert[] to look out for" found to be non-actionable opinion).

- Paragraphs 63, 66, and 68 do not identify any statement by either Dr. Pellecchia or Dr. Malik about Plaintiff. The closest these paragraphs come to mentioning any statements by either of the Defendants involves Dr. Malik "attacking [Plaintiff] for 'questioning her integrity.'" Indeed, it seems Plaintiff did, in fact, question Dr. Malik's integrity (whether fairly or not), and therefore, the statement is not actionable.

- Paragraph 83 alleges that Dr. Pellecchia would "repeatedly insult [Plaintiff], calling her annoying, arrogant, and offensive." As with similar labels, discussed above, insults like these are statements of opinion and not actionable.

- Paragraphs 84 and 85 do not identify any statements by either Dr. Pellecchia or Dr. Malik about Plaintiff.

- Paragraph 86 contains a statement by Dr. Malik that may be defamatory. Specifically, it alleges that Dr. Malik "lied to residents and leadership claiming that Dr. Studders refused to mentor her to be the Associate Program Director." Importantly, Defendants provide no argument as to why this particular statement is not defamatory. It is not a statement of opinion and would appear to impact Plaintiff's professional standing.

- Paragraph 87 alleges that Dr. Malik "told the special review members that she was not going to work on her relationship with Dr. Studders because she was just waiting for Dr. Studders to be fired." This is not an actionable statement and Plaintiff does not provide any reason to find otherwise.

- Paragraph 88 alleges that Dr. Malik spoke "poorly" about Plaintiff at meetings. Without more information, the Court cannot conclude that anything that was said was, in fact, false.

- Paragraph 103 contains a statement in which Dr. Pellecchia told Plaintiff that her relationship with Dr. Malik was poor because Plaintiff "questioned her integrity by reporting" the exam procedure violation. Again, it seems Plaintiff did, in fact, question Dr. Malik's integrity.

- Paragraphs 119 and 133 do not identify any statement by either Dr. Pellecchia or Dr. Malik about Plaintiff.

Therefore, Plaintiff's claim for defamation survives because of a discrete number of allegations (paragraphs 27, 28, and 86), but Plaintiff should note that most of the statements in the complaint do not constitute defamation.

### 6.    PWPCL Claim – Count 8

Plaintiff's final claim is brought under the Pennsylvania Wage Payment and Collection Law (the "WPCL").  She seeks compensation for lost wages and retirement benefits.[128]  Plaintiff alleges: (1) Geisinger mischaracterized her leave of absence as "vacation;" (2) Geisinger failed to pay her salary from the time of her constructive discharge in March 2018 until June 2018; and (3) Geisinger forced her to forfeit retirement benefits for that same time period.

The WPCL gives employees a statutory remedy that allows them to recover wages and lost benefits which they are contractually entitled to.[129]  But the WPCL "does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement."[130]

As this Court has determined that Plaintiff was an at-will employee, she has failed to plead the existence of a contract that would entitle her to such benefits. Pennsylvania courts have regularly held that a plaintiff must establish the existence

---

[128]   Doc. 18 at ¶ 232.
[129]   *In re Cargill Meat Solutions Wage & Hour Litig.*, 632 F.Supp.2d 368, 397 (M.D. Pa. 2008).
[130]   *Banks Engineering Co., Inc. v. Polons*, 697 A.2d 1020, 1024 (Pa. Super. 1997).

of a contractual agreement.[131]  But even if Plaintiff had cleared this preliminary

hurdle, she would have failed to state a claim under the WPCL.

Her first claim, dealing with her leave of absence, is insufficiently pled.  In

briefing, Plaintiff states that she "specifically alleges that she requested and was

granted *administrative* leave."[132]  But this is pled nowhere in the complaint.

Instead, Plaintiff's complaint simply alleges that she "asked if it would be okay to

take the following week off given what had just transpired and to decide if she was

going to return to Geisinger and in what role."[133]  Plaintiff emphasizes that she

requested administrative leave, but the word "administrative" is never used in the

context of her absence, and there is no other suggestion that this leave was

administrative. Plaintiff may not attempt to amend her complaint through her brief

in opposition to the motion to dismiss.  The complaint itself simply alleges that she

asked to "take the following week off."

Finally, throughout her briefing, Plaintiff has repeatedly sought refuge in the

argument that a given point of contention is a "factual issue that cannot be resolved

at the pleading stage."[134]  For example, in her WPCL claim, the supposed factual

issue is "whether the Geisinger entities properly characterized her time off as

---

[131]  *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. 2011) ("To present a wage-payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation.") (internal quotation omitted).

[132]  Doc. 24 at 35 (emphasis in original).

[133]  Doc. 18 at ¶ 141.  Paragraph 142 contains a similar allegation.

[134]  Doc. 24 at 37.

vacation."[135]  This argument is less than compelling, because it is *Plaintiff's burden* at the motion to dismiss stage to support her claim *with* well-pled *facts*. Saying that something is a "factual issue" only draws attention to the fact that Plaintiff has not pled the necessary facts to state a claim.  For this separate reason, her administrative leave theory fails at the moment. The Court expects that curing this deficiency, however, should not be particularly difficult.

Plaintiff's claim seeking her salary from the time after her supposed constructive discharge also fails.  Plaintiff's argument is that she has "adequately pled a breach of contract claim upon which this claim is premised."[136]  However, this Court has already dismissed the contract claim.  Because Plaintiff acknowledges that this theory of her WPCL claim is premised on the theoretical breach of contract, the WPCL claim fails as well.

Finally, Plaintiff seeks the recovery of lost retirement benefits totaling approximately $55,000.  But Plaintiff has not adequately pled that these retirement benefits are of the sort that are covered by the WPCL.  Plaintiff's sole allegation supporting this theory is that she was forced "to forfeit retirement benefits in the amount of at least approximately $55,500."[137]  In her brief, she argues that the WPCL "has been broadly defined to include fringe benefits and equity

---

[135]  *Id.*
[136]  *Id.*
[137]  Doc. 18 at ¶ 232.

interests."[138]  That is correct but excludes relevant statutory language.  The definition of wages "includes fringe benefits or wage supplements."[139]  Fringe benefits include, in relevant part, "all monetary employer payments to provide benefits under any employee benefit plan, <u>as defined in</u> section 3(3) of the Employee Retirement Income Security Act of 1974."[140]

Plaintiff has not pled facts to support the idea that any of the fringe benefits at issue fall under the definition of that term, and it is unclear to the Court that they do.  And Plaintiff's brief devotes little attention to this question and does not offer any authority for her proposition.  Therefore, even if Plaintiff had established a contractual right to any fringe benefits after the end of her employment (she has not), this claim would fail because she has not alleged that her retirement benefits would qualify as fringe benefits.  The Court only has a conclusory statement before it, which cannot be credited in evaluating the sufficiently of the pleading.  Therefore, the claim for retirement benefits is dismissed, but Plaintiff is granted leave to amend to include relevant details.

---

[138]  Doc. 24 at 37.
[139]  43 P.S. § 260.2a.
[140]  *Id.*  Other fringe benefits are also payable to employees, but Plaintiff does not invoke the definitions of those benefits either.  The claim appears focused on the retirement benefits.

## III.    CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part.  Plaintiff is granted leave to amend.  Plaintiff will be given fourteen days to file a second amended complaint.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge