# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DR. EILEEN STUDDERS,            No. 4:20-CV-00914

       Plaintiff,               (Chief Judge Brann)

   v.

GEISINGER CLINIC, *et al.*,

       Defendants.

## MEMORANDUM OPINION

### OCTOBER 5, 2021

## I.     INTRODUCTION

On February 25, 2021, Plaintiff Dr. Eileen Studders filed her Second Amended Complaint in this case. Studders alleges violations of the Pennsylvania Whistleblower Law, Pennsylvania Human Relations Act, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967, and Pennsylvania Wage Payment and Collection Law. Studders also alleges breach of contract and defamation under Pennsylvania law. Defendants include Geisinger Clinic, Geisinger Medical Center, Geisinger Health, Dr. Robert Pellecchia, Dr. Mohsen Shabahang, Dr. Gayatri Malik, Dr. Jaewon Ryu, and Lynn Miller.

On March 11, 2021, Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is now

ripe for disposition; for the following reasons, it is denied in part and granted in part. Further leave to amend is not granted.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a claim"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

---

[1]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]   *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[3]   *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]   *Id.* at 327.

[5]   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[6]   550 U.S. 544 (2007).

[7]   556 U.S. 662 (2009).

[8]   *Id.* at 670.

[9]   *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]  No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16]  However, "the tenet that a court must accept

---

[10]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]   *Id.*
[12]   *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).
[13]   *Twombly*, 550 U.S. at 556.
[14]   *Iqbal*, 556 U.S. at 679.
[15]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).
[16]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

as true all of the allegations contained in a complaint is inapplicable to legal
conclusions."[17]  "Threadbare recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third
Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court
> reviewing the sufficiency of a complaint must take three steps.  First, it
> must tak[e] note of the elements [the] plaintiff must plead to state a
> claim.  Second, it should identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of truth.
> Finally, [w]hen there are well-pleaded factual allegations, [the] court
> should assume their veracity and then determine whether they plausibly
> give rise to an entitlement to relief.[19]

A plaintiff in an employment discrimination case does not need to establish
a prima facie case in his or her complaint.  The Third Circuit clarified this point
recently, stating: "a complaint need not establish a prima facie case in order to
survive a motion to dismiss."[20]

When deciding a motion to dismiss, a Court generally considers only the
allegations in the complaint, exhibits attached thereto, and facts of public record.[21]
Normally, to consider anything beyond those sources, a motion to dismiss must be

---

[17]  *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[18]  *Id.  See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.)
("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a
motion to dismiss.").
[19]  *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).
[20]  *Id.* at 788.
[21]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

converted to a motion for summary judgment.[22]   But consideration of materials
outside the complaint is not completely barred on a 12(b)(6) motion.   A Court may
consider any documents that are integral or explicitly relied upon in the complaint.[23]
"However, before materials outside the record may become the basis for a dismissal,
several conditions must be met."[24]   "For example, even if a document is 'integral' to
the complaint, it must be clear on the record that no dispute exists regarding the
authenticity or accuracy of the document."[25]   It must also be clear that there exist no
material disputed issues of fact regarding the relevance of the document.[26]   In this
matter, I find that these conditions have been met, and will consequently consider
Defendants' attachment.

## III.   FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

The facts alleged in the Second Amended Complaint, which I must accept as
true for the purposes of this motion, are as follows.

In 2014, Plaintiff Dr. Eileen Studders started working for Geisinger as a
pediatric dentist.[27]   In February 2016, Studders became Program Director and

---

[22]   *See* Fed. R. Civ. P. 12(d).
[23]   *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
[24]   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[25]   *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
[26]   *Faulkner*, 463 F.3d at 134.
[27]   Doc. 28 at ¶ 20.

Interim Chief of Pediatric Dentistry at Geisinger.[28]  At first, Studders had a normal, professional relationship with her supervisor, Dr. Robert Pellecchia.[29]

That changed in August 2016, when Pellecchia began a harassment campaign to replace Studders with his friend's wife, Dr. Gayatri Malik.[30]  In the following months and years, Studders had various workplace disagreements with Pellecchia, Malik, and Malik's husband, Dr. Anil Kotru.[31]  Among other issues, these disagreements involved Malik's request for time off, Malik's work performance, Malik's unauthorized use of copyrighted exam questions, and a violation of the residency match process's confidentiality rules.[32]

Studders's and Pellecchia's relationship continued deteriorating, as Pellecchia often called Studders annoying, arrogant, and offensive.[33]  Pellecchia also made humiliating comments about Studders's appearance, refused to acknowledge her in meetings, and ignored her emails.[34]  Apparently, Pellecchia did not behave this way with male employees.[35]

On January 22, 2018, Studders emailed senior Geisinger leadership, including Drs. Mohsen Shabahang and Jaewon Ryu.[36]  In this email, Studders complained of

---

[28]  *Id.* at ¶ 23.
[29]  *Id.* at ¶ 24.
[30]  *Id.* at ¶¶ 25–30.
[31]  *Id.* at ¶¶ 25–75.
[32]  *Id.*
[33]  *Id.* at ¶¶ 30, 209.
[34]  *Id.*
[35]  *Id.* at ¶ 210.
[36]  *Id.* at ¶¶ 122–24.

Pellecchia's harassment, retaliation, and discrimination.[37]  Indeed, a special review committee reported a hostile work environment under Pellecchia's leadership.[38]

On February 1, 2018, Geisinger removed Studders as Program Director and replaced her with a younger Dr. Natalie Stinton.[39]  Studders then retained counsel, who tried negotiating her reinstatement as Program Director.[40]  But Geisinger refused, thus ending Studders's time there.[41]

## IV.    DISCUSSION

In her Second Amended Complaint, Studders raises eight counts under state and federal law.  Of the eight counts, Defendants move to dismiss seven.  The Court addresses each of these seven in turn.

### A.    Pennsylvania Whistleblower Law — Count 1

First, Studders alleges that Defendants retaliated against her in violation of the Pennsylvania Whistleblower Law ("PWL").[42]  This statute protects employees from discrimination and retaliation if they report "an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act."[43]  Studders's allegations of wrongdoing survive, but her allegations of waste are dismissed.

---

[37] *Id.*
[38] *Id.* at ¶¶ 125–35.
[39] *Id.* at ¶ 136.
[40] *Id.* at ¶¶ 148–59.
[41] *Id.* at ¶¶ 156–57.
[42] 43 P.S. § 1423.
[43] *Id.*

### 1.    Wrongdoing

Studders alleges that she reported wrongdoing by a public body, Geisinger.[44]

Public bodies include "[a]ny other body . . . which is funded in any amount by or

through Commonwealth or political subdivision authority or a member or employee

of that body."[45]   Here, Studders alleges that Geisinger is a public body because it

receives funds from the Commonwealth of Pennsylvania.[46]

For example, Studders mentions LIFE Geisinger, in which Geisinger receives

funds from the Pennsylvania Department of Public Welfare to support seniors living

at home.[47]   Studders also lists Pennsylvania agencies that specifically appropriate

funds to Geisinger.[48]   At the pleading stage, these allegations regarding funding and

appropriation plausibly indicate that Geisinger may be a public body for PWL

purposes.[49]

Defendants counter that LIFE Geisinger does not involve Geisinger Clinic and

Geisinger Medical Center and therefore cannot subject these affiliates to the PWL.[50]

---

[44]   Doc. 28 at ¶¶ 173–91.

[45]   43 P.S. § 1422.

[46]   Doc. 28 at ¶¶ 176–82.

[47]   *Id.* at ¶ 180.

[48]   *Id.*

[49]   *See Romer v. MHM Health Pros.*, No. 1:20-CV-1275, 2020 WL 6747418, at *3 (M.D. Pa. Nov. 17, 2020) (Rambo, J.) (denying motion to dismiss PWL wrongdoing claim because "Plaintiff alleged that Defendant received payment from the DOC"); *Cf. Lomaskin v. Siemens Med. Sols. USA, Inc.*, 820 F. App'x 138, 141 (3d Cir. 2020) (holding that "the phrase 'funded by or through' . . . refers to money 'specifically appropriated by a governmental unit.' Siemens does not receive appropriations from Pennsylvania or any of its political subdivisions, including Penn State, and so does not qualify as a public body under Pennsylvania whistleblower law") (internal citation omitted).

[50]   Doc. 32 at 20–21.

But Studders alleges that Geisinger Clinic and Geisinger Medical Center rendered services in LIFE Geisinger.[51]    Studders also alleges that Pennsylvania, its Department of Health, its Department of Corrections, and its Department of Public Welfare specifically appropriated money for Geisinger Clinic and Geisinger Medical Center.[52]    Taking these allegations as true, as this Court must do, Studders has plausibly alleged that Geisinger Clinic and Geisinger Medical Center receive funds from Pennsylvania or its political subdivision authorities.[53]

Defendants further counter that Geisinger Health, Geisinger Medical Center, Pellecchia, Shabahang, Malik, Ryu, and Miller are not subject to the PWL because they did not employ Studders.[54]    But Studders's complaint repeatedly alleges that Geisinger Health and Geisinger Medical Center employed her.[55]    Indeed, Defendants attach a Practice Agreement that required Studders to serve "Geisinger Clinic or Geisinger Health System Foundation . . . ."[56]    At the pleading stage, the language in this agreement and the corresponding allegations permit the inference that Geisinger Health and Geisinger Medical Center employed Studders too.

---

[51]    Doc. 28 at ¶ 180.
[52]    *Id.*
[53]    *See Romer*, 2020 WL 6747418.  ("In short, Plaintiff has alleged a plausible claim under the PWA by alleging that she was terminated by a public body for reporting wrongdoing.  Thus, at this time, the court will allow that claim to go forward.").
[54]    Doc. 32 at 15–16.
[55]    Doc. 28 at ¶¶ 11–12, 180, 181, 183.
[56]    Doc. 29, Exhibit A.

As for Pellecchia, Shabahang, Malik, Ryu, and Miller, the statutory definition of public body includes "a member or employee of that body."[57]  So these defendants are potentially subject to the PWL as Geisinger employees.  Indeed, precedent exists for PWL claims proceeding against individual employees.[58]  Therefore, this Court need not dismiss the PWL claims against Pellecchia, Shabahang, Malik, Ryu, and Miller at this stage.  The portion of Studders's PWL claims alleging wrongdoing by a public body survive.

### 2.    Waste

Studders also claims that Geisinger retaliated against her for reporting "Dr. Malik's failure to show up to work on time, Dr. Malik's failure to engage in resident instruction, Dr. Malik's absence from direct patient care and clinical oversight, Dr. Malik's disappearances from the floor, [and] Dr. Malik's failure to aid residents in the operating room . . . ."[59]  Studders alleges that the conduct she reported constituted "substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from the Commonwealth or political subdivision sources."[60]   But this allegation is conclusory because it repeats the statutory definition of waste verbatim.[61]  Thus, this allegation is excluded.

---

[57]  43 P.S. § 1422.
[58]  *See, e.g.*, *Rankin v. City of Philadelphia*, 963 F. Supp. 463, 468 (E.D. Pa. 1997).
[59]  Doc. 28 at ¶ 187.
[60]  *Id.* at ¶ 188.
[61]  *See Connelly*, 809 F.3d at 790 (excluding complaint allegations that "paraphrase in one way or another the pertinent statutory language or elements of the claims in question").

Studders further alleges that "the acts and omissions of Dr. Malik and the Oral Surgery Department under the direction and control of Dr. Pellecchia . . . resulted in substantial waste amounting to tens of thousands of dollars in connection with both lost and inefficient patient care services and the need for increased patient care services."[62]   But Studders does not allege any facts indicating that these acts and omissions involved "funds or resources belonging to or derived from Commonwealth or political subdivision sources," as the statutory definition of waste requires.[63]   Because Studders does not adequately plead waste, the portion of her PWL claims alleging waste are dismissed.

### B.   Sex Discrimination — Counts 2 and 4

Next, Studders claims disparate treatment, hostile work environment, and retaliation under Title VII and the Pennsylvania Human Relations Act.[64]   All three claims survive Defendants' motion to dismiss.

### 1.   Disparate Treatment

Starting with disparate treatment, Studders must allege that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could permit an inference of intentional discrimination.[65]   Defendants move to

---

[62]   Doc. 28 at ¶ 188.
[63]   43 P.S. § 1422
[64]   43 P.S. §§ 951–63.
[65]   *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

dismiss Studders's disparate treatment claim, arguing that she does not assert that she was mistreated because of her sex.

Studders alleges that her supervisor Dr. Pellecchia mistreated her in various ways, like commenting on her appearance, calling her arrogant and annoying, and ignoring her.[66]  And Pellecchia allegedly did not treat male employees this way.[67]  These allegations about Pellecchia's treatment of male versus female employees permit the inference that Pellecchia mistreated Studders because of her sex.  Thus, Defendants' motion to dismiss is denied as to Studders's disparate treatment claim.

### 2.    Hostile Work Environment

Studders also alleges a hostile work environment.  To plead a hostile work environment, Studders must allege that: "(1) [S]he suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present."[68]  "[L]ess severe isolated incidents which would not themselves rise to the level of [discrimination] may, when taken together as part of 'the overall scenario,' evidence [discriminatory] animus, and one severe incident may be enough to create a hostile work environment."[69]

---

[66]   Doc. 28 at ¶ 209.
[67]   *Id.* at ¶ 210.
[68]   *Komis v. Sec'y of United States Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir. 2019) (citation omitted).
[69]   *Id.* at 293–94.

Here, Studders alleges that Pellecchia made humiliating comments about her appearance and frequently called her arrogant, annoying, and offensive.[70]  Studders further alleges that Pellecchia would not speak to her in clinic, acknowledge her in meetings, or respond to her emails.[71]  Notably, Pellecchia did not behave like this with male employees.[72]

Allegedly, Studders felt so physically threatened in Pellecchia's presence that she emailed Human Resources.[73]  Moreover, a special review committee reported a hostile work environment under Pellecchia's leadership.[74]  "Taken together, these allegations support severe or pervasive discrimination such that the working environment was subjectively and objectively offensive."[75]  Defendants' motion to dismiss is therefore denied as to Studders's hostile work environment claim.

### 3. Retaliation

Studders further alleges retaliation.  "A prima facie case of illegal retaliation requires a showing of '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'"[76]  The third element of causation is at issue here.

---

[70]  Doc. 28 at ¶¶ 30, 209.
[71]  *Id.* at ¶¶ 83, 210
[72]  *Id.* at ¶ 210.
[73]  *Id.* at ¶ 211.
[74]  *Id.* at ¶ 206.
[75]  *Starnes v. Butler Cty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020).
[76]  *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (citation omitted).

Specifically, Studders alleges that Geisinger removed her as Program Director ten days after she emailed senior leadership about sex discrimination and a hostile work environment.[77]   This temporal proximity of ten days plausibly indicates causation.[78]   Thus, Defendants' motion to dismiss is denied as to Studders's retaliation claim.

### C.   Age Discrimination — Counts 2 and 5

Next, Studders claims age discrimination under the Age Discrimination in Employment Act of 1967 and the PHRA.   To establish age discrimination, Studders must show that she (1) was at least forty, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[79]   Studders alleges that she was in her mid-forties, qualified, and replaced by someone in her early thirties.[80]   This suffices to plausibly allege age discrimination at the pleading stage.[81]   Thus, Defendants' motion to dismiss is denied as to Studders's age discrimination claim.

---

[77]   Doc. 28 at ¶¶ 122, 162.

[78]   *See Fasold v. Just.*, 409 F.3d 178, 190 (3d Cir. 2005) (holding that "inference of retaliation can be drawn" from temporal proximity of "less than three months"); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (holding that "timing of three to four weeks" was "suggestive" of retaliation).

[79]   *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

[80]   Doc. 28 at ¶¶ 214–20, 234–43.

[81]   *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267–68 (3d Cir. 2021) ("Martinez plausibly pleaded age discrimination.   He alleged that his replacements were 'significantly younger.'   That was enough. . . .   We will thus reverse and remand to let this case proceed to discovery.").

### D.    Aiding and Abetting — Count 3

Relatedly, Studders alleges aiding and abetting liability for her PHRA discrimination and retaliation claims.[82]  Defendants move to dismiss these aiding and abetting claims because the primary discrimination and retaliation claims fail.[83]  But as the previous paragraphs explain, Studders has plausibly alleged sex discrimination, retaliation, and age discrimination.   Because these primary employment discrimination claims survive, so do the secondary aiding and abetting claims.  Defendants' motion to dismiss is therefore denied as to Studders's aiding and abetting claims.

### E.    Breach of Contract — Count 6

Next, Studders alleges that Geisinger breached the Practice Agreement by failing to pay her salary during administrative leave and breached other employment agreements by failing to recognize certain 401k benefits as vested.  But Studders does not discuss contract provisions governing leave or 401k benefits.[84]  Nor does Studders allege facts indicating which contract governs 401k benefits.  Without such allegations, this Court cannot conclude that Studders plausibly alleged breach of

---

[82]  43 P.S. §955(e).
[83]  Doc. 32 at 37.
[84]  Doc. 28 at ¶¶ 244–54.

contract.[85]   Because Studders has not pled the "essential terms" of the relevant contracts, her breach of contract claim is dismissed.[86]

### F.   Pennsylvania Wage Payment and Collection Law — Count 8

Finally, Studders alleges that Geisinger violated Pennsylvania's Wage Payment and Collection Law ("WPCL") by failing to pay her salary during administrative leave and failing to recognize certain 401k benefits as vested.[87]   The WPCL "provides a statutory remedy when the employer breaches a *contractual obligation* to pay earned wages.   The *contract* between the parties governs in determining whether specific wages are earned."[88]   And as the paragraph above explains, Studders has not adequately pled facts about Geisinger's contractual obligations.   In the absence of well-pled factual allegations, Studders's WPCL claim is dismissed as well.

---

[85]   *See Pagano v. Ventures Tr. 2013-I-HR*, No. 3:15-CV-01489, 2016 WL 750272, at *11 (M.D. Pa. Jan. 22, 2016) (dismissing breach of contract claim because "[w]ithout more information regarding the specific terms of the Defendants' notification obligations under the Mortgage agreement, the Court is unable to determine whether [Defendant] satisfied its obligations"), *report and recommendation adopted sub nom. Pagano v. Ventures Tr. 2013-1-HR*, No. 3:CV-15-1489, 2016 WL 755489 (M.D. Pa. Feb. 24, 2016).

[86]   *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) ("A cause of action for breach of contract must be established by pleading (1) the existence of a contract, *including its essential terms*, (2) a breach of a duty imposed by the contract and (3) resultant damages.   While not every term of a contract must be stated in complete detail, *every element must be specifically pleaded*.") (emphasis added).

[87]   Doc. 28 at ¶¶ 264–66.

[88]   *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990) (emphasis added).

## V.    CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied as to Counts 2, 3, 4, and 5.  It is also denied as to Studders's allegations of wrongdoing in Count 1.  These claims survive.

Defendants' motion to dismiss is granted with prejudice as to Counts 6 and 8. It also granted with prejudice as to Studders's allegations of waste in Count 1.  Leave to amend is not granted.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[89]   A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[90]   Amendment would be futile here because Studders has already amended her complaint twice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[89]   *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).
[90]   *Id.*